IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Robert Landrum, #316331 | ) | |
| | ) | Civil Action No. 8:08-2993-CMC-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| George T. Hagan, Warden | ) | |
| at Allendale Correctional | ) | |
| Institution; SCDC; | ) | |
| Dr. David Bowens, DMD; | ) | |
| Ms. Carla Davis, and Dr. | ) | |
| Douglas McPherson, | ) | |
| DMD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment. (Dkt. # 11.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on August 27, 2008, seeking damages for alleged civil rights violations.[1] On November 26, 2008, the defendants filed a motion for summary

---

[1]This date reflects that the petition was date stamped as having been received on August 27, 2008, at the Allendale Correction Institution mailroom. (Compl. Attach. # 3.)

judgment.  On December 1, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  The plaintiff filed a response opposing the defendants' summary judgment motion on January 1, 2009, and a supplemental response on April 16, 2009.

## I. <u>FACTS PRESENTED</u>

The plaintiff is an inmate with the South Carolina Department of Corrections ("SCDC") currently housed in the Allendale Correctional Institution ("ACI").  The plaintiff alleges claims of negligence and medical indifference in regard to dental care against the defendants.  (*See* Compl. generally.)  The defendant Dr. Douglas McPherson is the Dental Director of the South Carolina Department of Corrections ("SCDC").  The defendant Dr. David Bowens is the dentist who has provided dental care to the plaintiff at the ACI and the defendant Carla Davis is a dental assistant at the ACI.

In his complaint, the plaintiff alleges that after his transfer to the ACI, he requested dental treatment numerous times.  (Compl. ¶ 11.)  He acknowledges that he was seen on at least four occasions between February and August 2007 and he has had several teeth extracted.  (Compl. ¶ 12.)  However, he alleges that between August and November 2007, he did not receive any dental treatment and when he requested treatment, he was told that

---

*Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

he had been placed on the list to be seen.  *Id.*  He alleges that on November 18, 2007, and

on several other occasions in November 2007, he requested dental treatment and stated

that he was in pain and "[h]e received no response to most of the requests and otherwise

he [was] told he was on a list to be seen."  (Compl. ¶ 13.)

The plaintiff alleges that on February 5, 2008, he again complained of pain and

requested dental treatment.  He alleges the defendant Davis responded and informed him

that he had been scheduled for an appointment on November 28, 2007, but he did not show

up for the appointment.  (Compl. ¶ 14.)   The plaintiff alleges he never received the order

to report ("OTR") and he did not sign any OTR or have any knowledge of the appointment.

*Id.*

The plaintiff acknowledges that he was seen by Dr. Bowen on March 5, 2008, and

that Dr. Bowen told him three teeth needed to be extracted.  He alleges Dr. Bowen told him

he would be scheduled for the extractions.  (Compl. ¶ 15.)  On April 24, 2008, he filed a

request for dental treatment in which he asked for the follow-up treatment from his March

5th appointment, i.e. the appointment for the extractions.  (Compl. ¶ 16.)  The defendant

Davis responded that he had been scheduled for an appointment on March 13th and an

OTR had been sent out, but that the plaintiff did not show up for the appointment.  *Id.*  The

plaintiff alleges that he did not know about the March 13th appointment and that he did not

receive the OTR because it had been sent to the wrong housing unit.  *Id.*

The plaintiff states that he was not seen for dental treatment again until June 19,

2008, despite his filing further requests and grievances.  (Compl. ¶ 17.)  He alleges that at

his June 19th appointment, he complained of pain in the three teeth which Dr. Bowens had said needed to be extracted, but Dr. Bowens did not address the extractions and instead indicated that the plaintiff would be scheduled for restoration of two different teeth. (Compl. ¶ 17.)  As of the date his complaint was filed, August 27, 2008, the plaintiff stated he had not received any other dental care despite complaints of pain and requests for dental treatment.  (Compl. ¶ 18.)

The plaintiff also alleges that the defendant SCDC has a shortage of dentists and that Dr. Bowens rotates between the various institutions.  (Compl. ¶ 19.)  He states that the ACI has not had a full-time dentist in four years and there is a backlog of inmates waiting on dental treatment.  (Compl ¶ 20.)  Finally, he alleges that because of the shortage in dental staff, the only dental services available at the ACI are extractions and not restorations, root canals, cleanings, or prosthetics.  (Compl. ¶ 21.)

The plaintiff is seeking injunctive relief in the form of an order requiring that he be provided with dental treatment, including extractions of his remaining teeth and a dental prosthesis.  The plaintiff is also seeking actual and punitive damages "as well as  damages up to the limits of the S.C. Torts Claims Act for the state law claims against the SCDC." (Compl. at 8.)

## II.  **APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise,

5

conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### III. DISCUSSION

As set forth above, in his compliant, the plaintiff has alleged he has been denied dental care. The defendants have moved for summary judgment and contend that the plaintiff has failed to state a cause of action and they are entitled to qualified immunity.

### A. Claims against the Medical Defendants - Dr. Bowen, Dr. McPherson, and Davis

In order to state a cognizable claim for the denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Disagreements between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment are not cognizable constitutional claims under the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Estelle*, 429 U.S. at 105-06. Claims of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318, 318-19 (4th Cir. 1975). Additionally, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is

6

medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Further, it is clear that dental care has been recognized as "one of the most important medical needs of inmates." *Ramos v. Lamm,* 639 F .2d 559, 576 (10th Cir. 1980). *See also Large v. Washington Co. Detention Ctr.*, 915 F.2d 1564 (unpublished) (4th Cir. 1990) (finding that there is ample authority recognizing that the failure to provide comparable basic corrective/medical devices such as hearing aids, eyeglasses, or dentures may amount to deliberate indifference to a serious medical need). Applying these principles, and taking the plaintiff's allegations in the light most favorable to him, the court concludes that the defendants are not entitled to summary judgment.

The following is a summary of the plaintiff's dental records while at the ACI. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 2 - Dr. Bowens' Aff. 3-10; and Attach. # 3 - Dr. McPherson's Aff. 3-5.) The plaintiff was first examined by the defendant Dr. McPherson on July 26, 2006, upon the plaintiff's admission to the SCDC and Dr. McPherson noted that the plaintiff had poor oral hygiene and was missing twelve teeth. Dr. McPherson noted that tooth # 19 had irreversible pulpitis and was extracted. The plaintiff did not show up for a dental appointment on January 29, 2007, and it was noted that the OTR was signed. The plaintiff then was seen by the dentist on February 22, 2007, when it was noted that teeth numbers 6 and 7 had irreversible pulpitis and needed to be extracted. These teeth were extracted on this date. The plaintiff did not show up for his follow-up appointment on February 27, 2007.

On May 15, 2008, the plaintiff filed a request for dental care, specifically for the extractions which he had been told were necessary and further he requested dentures. On May 18, 2007, staff responded that the plaintiff had been scheduled for an appointment. On May 24, 2007, the plaintiff was seen by the dentist and it was noted he had irreversible pulpitis in tooth number 2 and that tooth was extracted. The plaintiff was again seen on June 7, 2007, and it was noted he had irreversible pulpitis in teeth number 29 and 30 and these teeth were extracted.

The plaintiff did not show up for an appointment on August 16, 2007. On November 7, 2007, the plaintiff was seen by the dentist and it was noted that his dental health continued to decline. He had irreversible pulpitis in teeth numbers 23, 24, 25, and 26 and these teeth were extracted. On February 7, 2008, it was noted that the plaintiff had requested dental treatment while in the Special Management Unite ("SMU"). On March 5, 2008, the plaintiff was seen by the dentist and it was noted that teeth numbers 7, 8 and 9 had gross caries and needed to be extracted and the plaintiff would return for these extractions.[2] The plaintiff did not show up for an appointment on March 13, 2008. On June 19, 2008, the plaintiff was seen by the dentist and it was noted that he stated that he wanted all of his teeth extracted so he could get dentures. The dentist noted that not all the plaintiff's teeth needed to be extracted and teeth numbers 3 and 4 needed restoration and the plaintiff would be scheduled for these restorations.

[2]The undersigned notes that in the plaintiff's medical records it states that tooth number 7 had been extracted on February 22, 2007.

The following is a summary of the requests for dental treatment and grievances which are in the record. (Pl.'s Mem. Opp. Summ. J. Mot. Attachs. 5-8.) The plaintiff requested dental treatment on January 17, 2007, and was scheduled for an appointment twelve days later on January 29, 2007. The plaintiff, however, did not show up for this appointment.

On February 14, 2007, the plaintiff requested dental treatment and acknowledged that he had missed the January 29th appointment. He explained that he had an OTR for the January 29th appointment but that he had not been released from the building. The plaintiff was scheduled for another appointment eight days later on February 22, 2007. At this February 22nd appointment, he had two teeth extracted. The plaintiff did not show up for a follow-up appointment on February 27, 2007. On May 15, 2007, the plaintiff filed a request for dental treatment. The plaintiff specifically requested that he would like to be fitted for dentures. The plaintiff was scheduled for an appointment nine days later on May 24, 2007, and at that appointment one tooth was extracted.

On July 31, 2007, the plaintiff filed a request for dental treatment and he was scheduled for an appointment on August 16, 2007. The plaintiff did not show up for this appointment. The plaintiff was next seen on November 7, 2007, and several teeth were extracted. The plaintiff had been scheduled for a follow-up appointment on November 29, 2007, but he was apparently in lock-up and did not show up for the appointment.

On February 5, 2008, the plaintiff filed a request for dental treatment in which he stated that he had requested dental treatment in November 2007. The response noted that

the plaintiff had not shown up for an appointment on November 29th and he was told he would be rescheduled. A month later on March 5th, the plaintiff was seen by the dentist and it was noted that teeth numbers 7, 8 and 9 needed to be extracted and the plaintiff would return for these extractions. The plaintiff did not show up for an appointment on March 13, 2008.

On April 24, 2008, the plaintiff filed a request for dental treatment. The plaintiff complained that at his last appointment in March, the dentist had stated he would have some teeth extracted in one week. The defendant Davis responded noting that the plaintiff had not shown up for the March 13th appointment and that the plaintiff should not tell her how to do her job.

On May 17, 2008, the plaintiff filed a Step One grievance regarding his April 24th request for dental treatment. The plaintiff stated that he had not received or signed an OTR and that the defendant Davis should have re-scheduled him. He requested a dental appointment and requested that the defendant Davis undergo character training. He also alleged that he sent a request to staff form to Dr. McPherson on April 30, 2008, but had not received a response. The Step One grievance was responded to on June 5, 2008, and it was noted that the plaintiff had not shown up for the March 13th appointment but that he would be placed back on the list for an appointment. The plaintiff appealed to the Warden.

In his response dated June 17th, the Warden noted that the plaintiff did not show up for the March 13th appointment and had waited until April 24th to inquire as to why he had not been seen. The Warden noted that "[i]f you were in 'serious pain,' it would appear that

10

you would have made an attempt to sign up for sick call or send a request much sooner. You are going to be re-scheduled. Therefore your grievance is resolved." In the interim, on June 6, 2008, the plaintiff had filed another request for dental treatment stating that he was in serious pain. The plaintiff was seen by the dentist on June 19, 2008, and told that he would be scheduled to have two teeth restored with fillings.

The plaintiff filed a Step Two grievance on June 25, 2008, in which he stated that the Warden's response that his appointment was going to be re-scheduled did not resolve his grievance. He stated that he was seen by the dentist on June 19th, but that the dentist only scheduled him for fillings and not the recommended extractions. In a response dated July 11, 2008, from the defendant Dr, McPherson, the plaintiff was told he would be rescheduled "ASAP" and that if he was not satisfied with the medical care provided, he could request "Elective Outside Care."

In his supplemental response to the defendants' summary judgment motion which was filed April 16, 2009, the plaintiff states that he still has not had seen the dentist to have his teeth filled or extracted. (Pl.'s Supp. Mem. Opp. Summ. J. Mot. at. 2.) In his affidavit dated November 14, 2008, the defendant Dr. Bowens states that the plaintiff "is still on the filling list for teeth number (sic) 3 and 4. He has also not come back to have teeth 7, 8, and 9 extracted as was previously scheduled." (Defs.' Mem. Supp. SUmm. J. Mot. Attach. # 2 - Dr. Bowens' Aff. at 2.) However, the plaintiff was told several times that he had been placed on the list or that his appointment for the extractions would be rescheduled. As it has now been over a year since it was noted that the plaintiff needed these extractions and

restorations, the undersigned cannot recommend the defendants be granted summary judgment as to his claim that he has been denied dental treatment, i.e. fillings and extractions, since at least April 2008, when the plaintiff first requested treatment following the missed appointment and he was told his appointment would be rescheduled and that his name had been placed on the list of inmates waiting to be treated.[3]

The plaintiff's dental treatment has not merely been delayed; he has not received the treatment he was told he needed. Accepting the plaintiff's statement as true that he still has not received any dental care, as the court must in dealing with a summary judgment motion, a rational finder of fact could conclude that the failure to treat a prisoner who already has been informed that several teeth need to be extracted and others restored with fillings and has complained of pain for over a year constitutes deliberate indifference to the prisoner's serious medical needs under the subjective prong of the Eighth Amendment test. *See Hunt v. Dental Dep't,* 865 F.2d 198, 201 (9th Cir.1989) (finding a three-month delay of treatment to be deliberately indifferent in light of prisoner's serious dental problems and repeated complaints).

---

[3]The plaintiff contends he has been denied treatment since early November 2007. However, it is undisputed that two appointments were scheduled for the plaintiff, one on November 29, 2007, and the other on February 7, 2008, and he did not show up for either one and further the plaintiff was seen on March 5, 2008, and told he needed the extractions. While the plaintiff places blame on the defendants for missing several of the appointments, including the one on March 13, 2008, because he alleges the OTR was sent to he wrong housing unit, there is no evidence that defendants were deliberately indifferent to the plaintiff's dental needs. Rather it appears to have been simply an oversight that the OTR was incorrectly sent out to the wrong housing unit. "[A]n inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an claim of medical indifference. *Estelle,* 429 U.S. at l07

## B. Claims against the Non-Medical Defendant - Warden Hagan

The defendant Warden Hagan contends he is entitled to summary judgment because the plaintiff has failed to show any act against him involving the plaintiff's dental care. (Defs.' Mem. Supp. Summ. J. Mot. at 7.) The undersigned disagrees.

"It is well-settled that '[i]n order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Davis v. D.S.S. of Baltimore Cty.*, 941 F.2d 1206 (4th Cir. 1991) (unpublished)(*quoting Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). To hold a supervisor liable for a constitutional injury inflicted by a subordinate under § 1983, the plaintiff must allege facts establishing the following elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir .1994). Thus, in the context of a medical or dental indifference claim, supervisory liability may only be shown where the official failed to promptly provide a prisoner with necessary medical care, deliberately interfered with a prison medical personnel's performance, or was indifferent to a prison medical personnel's constitutional violation. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *Spruill v. Gillis*, 372 F.3d 218,

236 (3d Cir. 2004) (holding non-physician supervisor may be liable under §1983 if he knew or had reason to know of inadequate medical care).

In essence, the plaintiff alleges that Warden Hagan was deliberately indifferent to the plaintiff's dental needs because in his supervisory capacities he was aware of the dentist shortage, and knew that these shortages would result in Eighth Amendment violations. It is undisputed that Warden Hagan had some knowledge of the circumstances regarding the plaintiff's and other inmates' allegations as he has received numerous grievances.[4] In his response to the plaintiff's grievance, Warden Hagan stated the grievance had been resolved and noted that the plaintiff's appointment would be rescheduled. He has responded similarly to the other inmates' grievances.

The dismissal of a defendant is appropriate where the defendant's sole involvement in an action is related to the administrative remedy process. *Fellove v. Heady,* 2008 WL 196420 *4 (N.D.W.Va. 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); *Paige v. Kupec,* 2003 WL 23274357 *1 (D.Md. 2003)(finding that the warden should be dismissed where the *only* claim against the warden concerned his dismissal of plaintiff's administrative remedy). However, here, there

_____

[4]To the extent that the plaintiff is attempting to bring suit on the behalf of other inmates, the court finds that he has no standing to bring such a claim. *Inmates v. Owens,* 561 F.2d 560 (4th Cir.1977).

14

is evidence that Warden Hagan has knowledge that several inmates have not been receiving timely dental care for quite some time.[5]   The plaintiff has submitted grievances filed by other inmates at the ACI in which the inmates have complained about the lack of dental care.[6]   These grievances and their responses are evidence that the alleged denial of dental care is widespread at the ACI, thereby showing that Warden Hagan had actual or constructive knowledge that his subordinates were engaged in conduct posing a pervasive and unreasonable risk of constitutional injury.   Coupled with the fact that the plaintiff still has not received necessary dental care, they show the requisite "continued inaction in the face of documented widespread abuses," thereby proving deliberate indifference on the part of Warden Hagan.   Further, this evidence establishes an affirmative link between the defendant Hagan's inaction and the plaintiff's alleged constitutional injuries.

Furthermore, the undersigned notes that "[t]he existence of a back-log or difficulty in hiring or retaining dental professionals does not, in itself, excuse the defendants from the obligation to provide care. If the prison's existing medical staff is not competent to examine, diagnose, or treat an inmate's medical problems, then they must refer prisoners to others who can. Budgetary constraints . . . do not justify cruel and unusual punishment."  *Griffen*

---

[5]Further, as a defendant in this action, Warden Hagan is obviously aware that the plaintiff alleges he still has not been treated.

[6]To the extent that the plaintiff is attempting to bring suit on the behalf of other inmates,  the court finds that he has no standing to bring such a claim. *Inmates v. Owens,* 561 F.2d 560 (4th Cir.1977).

*v. Cook,* 2005 WL 1113830 *9 (D.Or. 2005)(unpublished)(internal citations omitted). *See Chambers v. NH Prison*, 562 F.Supp.2d 197 (D.N.H. 2007)(holding allegations that prison supervisors and prison dentist knew of prisoner's pain as result of unfilled cavity but nevertheless failed to take steps to ensure that care was provided him within reasonable time period provided the minimal facts necessary to state claim for supervisory liability under § 1983 for deliberate indifference to serious medical needs under Eighth Amendment). For these reasons, the undersigned recommends that the defendant Warden Hagan not be granted summary judgment.

### C. Claims against the SCDC

The plaintiff states that he is bringing a negligence cause of action against the defendant the SCDC pursuant to the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. § 15-78-20. However, the Eleventh Amendment divests this Court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts, such as a state agency or department.

Under *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), the Court held the Eleventh Amendment not only forbids suits by citizens of other States against a State, Eleventh Amendment also bars suits against a State filed by its own citizens. A state must expressly consent to suit in a federal district court. *Id.* The State of South Carolina has not consented to suit in a federal court. *See* S.C. Code Ann. § 15-78-20(e)(expressly providing that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit

in a federal court or in a court of another State).  It is clear that the SCDC is an agency of the State of South Carolina and functions as an arm of the state. Therefore, the claims against the SCDC based upon the SCTCA should be dismissed without prejudice based upon Eleventh Amendment immunity.

Furthermore, as to any § 1983 claims against the defendant the SCDC, it is well-settled that an agency of the state is not a person within the meaning of § 1983, and thus is not a proper defendant.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Therefore, to the extent that the plaintiff is attempting to bring any 1983 claims against the SCDC, these claims should also be dismissed from this action.

### D.  Qualified Immunity

The defendants assert that they are entitled to qualified immunity. The Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 818. Thus, determining whether an official is entitled to qualified immunity requires that the court make a two-step inquiry "in proper sequence."  *Parrish v. Cleveland,* 372 F.3d 294, 301-02 (4th Cir. 2004) (*quoting Saucier v. Katz*, 533 U.S. 194, 200 (2001)).  As a threshold matter, the court must determine whether, taken in the light most favorable to the plaintiff, the facts alleged show the defendants' conduct violated a constitutional right.  *Id.*

If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail. *Id.* If the facts do establish such a violation, however, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. *Id.* In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id.* "If the right was not clearly established in the 'specific context of the case' – that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted' – then the law affords immunity from suit." *Id.* (*quoting Saucier,* 533 U.S. at 201). If the material facts were undisputed, the undersigned would apply clearly established law to determine whether the defendants are entitled to qualified immunity. However, "while the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (*quoting Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

At the time of the alleged conduct, the law on deliberate indifference to dental needs was clearly established. It would be clear to a reasonable prison dentist that delaying dental treatment for over a year in the face of an inmate's untreated pain was deliberately indifferent. The plaintiff's right to dental treatment was clearly established at the time of this incident. Accordingly, taken in the light most favorable to the plaintiff, the facts show

the defendants' conduct violated a clearly established constitutional right. Thus, the defendants are not entitled to summary judgment on the issue of qualified immunity because they had "'fair warning' that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.,* 447 F.3d 292, 313 (4th Cir. 2006). Therefore, the undersigned recommends that the defendants' motion for summary judgment on grounds of qualified immunity be denied.

### E. Relief

The undersigned notes that the plaintiff is seeking an injunction in the form of an order requiring the defendants provide him with dentures. While the plaintiff may want to have dentures, denying the plaintiff his preferred treatment does not constitute an Eighth Amendment violation. *James v. Pa. Dep't of Corr.,* 230 Fed. App'x 195 (3d Cir. 2007)(holding no deliberate indifference where inmate was denied a root canal and his tooth was extracted); *McQueen v. Karr,* 2002 WL 31688891 (5th Cir. 2002) (finding no Eighth Amendment violation where prisoner argued he was entitled to restorative dental care instead of tooth extraction); *Del Muro v. Fed'l Bureau of Prisons,* 2004 WL 1542216 (N.D.Tex. July 8, 2004) (finding no Eight Amendment violation where prisoner argued he was entitled to crowns and/or a bridge rather than tooth extraction). The plaintiff's claim through which he is seeking dentures is merely a disagreement over the treatment, which is not an actionable constitutional claim. Accordingly, the plaintiff's specific request for prosthetics or dentures should be denied.

## **CONCLUSION**

Wherefore, based on the foregoing, it is RECOMMENDED that the Defendants'

Motion for Summary Judgment (Dk. # 11) be DENIED.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

July 16, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).